**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 14-CR-229 - 1 & 2 |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | |
| JOWHAR SOULTANALI, | ) | |
| KABIR KASSAM, | ) | |
| | ) | |
| *Defendants*. | ) | |

**MEMORANDUM OPINION AND ORDER**

On August 23, 2016, defendants Jowhar Soultanali and Kabir Kassam entered voluntary pleas of guilty to crimes including mail fraud in violation of 18 U.S.C. § 1341 related to their businesses Brilliance Academy Inc. and Babbage Net School. R. 143-46. Their guilty pleas made certain property subject to forfeiture under 18 U.S.C. § 981(a)(1)(C). On October 20, 2017, Judge St. Eve, the previous judge on this case, entered preliminary orders of forfeiture forfeiting all rights, title, and interest of Soultanali and Kassam in certain specified property as property constituting or derived from proceeds traceable to the fraud. R. 241; R. 242. In total, the defendants were ordered to pay restitution of $11,393,762.00 and ordered to forfeit real property, vehicles, cash in lieu of life insurance policies, and over $3,000,000 in cash as property constituting or derived from proceeds traceable to the fraud.

On November 17, 2017, Scheila Kassam (Soultanali's daughter and Kassam's sister), Yasmin Kassam (Soultanali's wife), and Rehana Kassam (Kassam's wife) filed

timely notices of adverse claims (collectively, the "Adverse Claimants").[1] Pending before the Court is the government's motion to dismiss these adverse claims. R. 346. For the following reasons, that motion is granted.

## Legal Standard

Under the criminal forfeiture statute, a third party may petition for a hearing to adjudicate its interest in a property to be forfeited. 21 U.S.C. § 853(n)(2). Under Fed. R. Crim. P. 32.2, when a third party files a petition asserting an interest in property to be forfeited, the Court must conduct an "ancillary proceeding," Fed R. Crim. P. 32.2(c)(1), which closely resembles a civil action. "In the ancillary proceeding, the court may, on motion, dismiss the petition for . . . failure to state a claim . . ." Fed. R. Crim. P. 32.2(c)(1)(A). On a motion to dismiss, a § 853(n) petition is evaluated by the same standard as a civil complaint on a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *United States v. Daugerdas*, 892 F.3d 545, 552 (2d Cir. 2018); *United States v. Grossman*, 501 F.3d 846, 848 (7th Cir. 2007). Thus, the Court takes all factual allegations in the petition as true, Rule 32.2(c)(1)(A), but need not do the same for legal conclusions, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To obtain relief, each claimant must establish by a preponderance of the evidence either (a) that its interest is superior to that of the defendant because the claimant's interest arose before the defendant committed the criminal acts giving rise to the forfeiture,

---

[1] Scheila filed the adverse claim on behalf of herself. R. 280. Yasmin filed individually and on behalf of the Jowhar Soultanali Declaration of Trust dated May 28, 2009 and the Yasmin Kassam Declaration of Trust dated May 28, 2009. R. 281. Rehana filed individually and on behalf of the Kabir Kassam Declaration of Trust dated May 28, 2009 and the Rehana Kassam Declaration of Trust dated May 28, 2009. R. 282.

or (b) that the claimant was a bona fide purchaser for value without actual or constructive knowledge of the government's interest in the property. 21 U.S.C. § 853(n)(6). If the claimant establishes she meets one of the two criteria, the Court amends the order of forfeiture in accordance with its determination. *Id.*

## Discussion

The Adverse Claimants brought claims against five real properties, three vehicles, and several pieces of jewelry.[2] Their claims against the vehicles have been withdrawn pursuant to a January 24, 2018 settlement between the government and the Adverse Claimants. R. 311. In response to the government's motion to dismiss, the Adverse Claimants also withdrew their claims to the jewelry. R. 350 at 2. As a result, the only property at issue here are the following five real properties:

a) the real property commonly known as 121 Commons Court, Wheeling, Illinois ("Wheeling property");

b) the real property commonly known as 9445 N. Kenton, Unit 301, Skokie, Illinois, including parking spaces 3 & 53, and storage locker S-23 ("Unit 301 property");

c) the real property commonly known as 9212 N. Merrill, Morton Grove, Illinois ("Morton Grove property");

d) the real property commonly known as 9445 N. Kenton, Unit 106, Skokie, Illinois, including parking space 15 and storage locker S10 (Unit 106 property");

e) the real property commonly known as 9725 Woods Drive, Unit 909 and P-197, Skokie, Illinois ("Woods property") (collectively, the "Claimed Property").

The Adverse Claimants make nearly identical arguments in their adverse

---

[2] The Adverse Claimants do not claim rights to all the property identified in the Court's preliminary forfeiture orders. The Court will address only the property implicated in the adverse petitions.

3

petitions.[3] Those eleven arguments include: (1) the adverse claimants are "innocent owners" in the Claimed Property and as a result, their rights are superior to the government's; (2) the government's claims to the Claimed Property are time barred to the extent that any funds from the fraudulent activities are derived more than five years from the date the government's claims against the defendants first accrued pursuant to 28 U.S.C. § 2462; (3) the government's claims to the Claimed Property should be defeated because the assets are not derived from specified unlawful activity; (4) the government's claims to the Claimed Property should be defeated because the assets are subject to a resulting trust against the Claimed Property; (5) the Claimed Property is subject to an exemption; (6) the government cannot take assets that are exempt by law from creditor action; (7) the forfeiture of the Claimed Property is constitutionally excessive; (8) the government has no right to claim any of the Claimed Property as "substituted property" pursuant to 21 U.S.C. § 853(p); (9) the Adverse Claimants have maintained, preserved, and paid for the Claimed Property with their legitimate income; (10) the government's claims to the Claimed Property should be defeated because the assets are marital property; and (11) the government's claims to the Claimed Property should be defeated because the assets are held in tenancies by the entirety. The government addresses each argument in its motion to dismiss. R. 346. The government also argues that the Adverse Claimants' petitions should be dismissed for failure to state a claim because they were

---

[3] Some of those arguments do not apply to each property, but for purposes of this opinion, the Court need not distinguish the arguments by property.

not supported by a statement sworn under penalty of perjury as required by 21 U.S.C. § 853(n)(2), and because the petitions fail to specify the time and circumstances of the Adverse Claimants' acquisition of interest in the claimed properties.

In response to the government's motion to dismiss, the Adverse Claimants make three arguments. First, they argue their claims are superior to the government's because two of the Claimed Properties are held as tenancies by the entirety. Second, the Adverse Claimants argue their claims are superior because they made payments toward the properties' tax obligations, homeowner association dues, and maintenance obligations with their legitimate income. Third, the Adverse Claimants argue their sworn statements are sufficient to meet the requirements of 21 U.S.C. § 853(n)(2), or that the issue can be easily remedied.[4] The Court will address each argument in turn.

**A. Tenancy by the Entirety**

The Adverse Claimants first argue that the Morton Grove property and the Wheeling property are not subject to forfeiture because they are held as tenancies by the entirety.[5] Defendant Soultanali and his wife Yasmin purchased the Morton Grove property in August 1995. R. 350-1. Defendant Kassam and his wife purchased the

---

[4] The remaining arguments in the Adverse Claimants' petitions are waived. *See Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 466 (7th Cir. 2010) (failure to respond to an argument results in its waiver).

[5] A tenancy by the entirety is a form of joint ownership of property available only to spouses. In a tenancy by the entirety, the property is conveyed to the spouses as if they were one person—each own 100% of the property. *Marquette Bank v. Heartland Bank & Tr. Co.*, 41 N.E.3d 1007, 1010 (Ill. App. Ct. 1st Dist. 2015).

Wheeling property in January 2006. R. 350-2. Both properties were purchased by the two sets of spouses before the criminal activity at issue here. However, the government presented evidence that fraudulent funds were used to pay off the mortgages of both properties in late 2010, and as a result, the Court found the properties to be direct proceeds of the criminal activity. R. 241; R. 242.

Illinois law determines whether an adverse claimant has a legally cognizable interest in the property. *United States v. Szaflarski*, 614 F. App'x 836, 838 (7th Cir. 2015). In Illinois, real estate held through a tenancy by the entirety protects a spouse against having his or her homestead property sold to satisfy the individual debts of the other spouse, unless the property was transferred into tenancy by the entirety with the sole intent to avoid the payment of debts existing at the time of the transfer. 735 ILCS 5/12–112. This exemption thus protects an innocent spouse from losing the marital home because of the individual debts of his or her spouse. *Marquette Bank v. Heartland Bank & Tr. Co.*, 41 N.E.3d 1007, 1010 (Ill. App. Ct. 1st Dist. 2015).

The Seventh Circuit in *United States v. Lee*, 232 F.3d 556, 560 (7th Cir. 2000) recognized the balance between protecting the innocent spouse's interest in the marital home and the government's right to seize property after the commission of a crime. The *Lee* court held that a family home held as a tenancy by the entirety was not subject to forfeiture as substituted property. *Id*. at 562. The court did not decide whether the same result would apply to a property that was derived from fraudulently obtained funds, instead noting:

> Our context is significantly different, because the only claim the government has to the Lee house arises because the house could be

6

> treated as a substitute asset, pursuant to 18 U.S.C. § 982(b)(2) and 21 U.S.C. § 853(p). In such a case, the need to strike a balance between the government's interest in seizing the means for committing a crime and the innocent spouse's rights must be assessed differently. In our view, there is no warrant for ignoring the nature of the property right created by the state law—here, the Florida law of tenancy by the entirety—in a substitute asset case. (We thus have no need to consider whether we would agree with the Third Circuit's approach in a case involving property used to commit an offense or property that can be traced to it.)

*Lee*, 232 F.3d at 561. That Third Circuit case discussed in *Lee* is *United States v. Parcel of Real Property Known as 1500 Lincoln Ave.*, 949 F. 2d 73 (3rd Cir. 1991). There, the Third Circuit adopted a hybrid approach to address the situation presented here—balancing an innocent spouse's interest in marital property with the government's right to forfeiture of property that can be traced to the criminally derived funds. The court in *1500 Lincoln Ave* allowed for forfeiture of the defendant's interest in a tenancy by the entirety while recognizing his wife's right to full and exclusive use of the property during her lifetime, protection against any alienation without her consent, and her right to obtain title in fee simple if the husband predeceased her. *Id.* at 77; *see also United States v. Franco,* 2017 WL 3187392, at *6 (W.D. Va. July 26, 2017) (adopting the same hybrid approach for a property held as a tenancy by the entirety and recognizing the difficulty in balancing the government's right to forfeiture with an innocent spouse's interest in a property).

Like in *1500 Lincoln Ave*, and unlike in *Lee*, the properties at issue here are subject to forfeiture because the mortgage payments on the properties derived from fraudulently obtained funds. *See* R. 241-42, 245, 249. Accordingly, the Court cannot reach the same result as the *Lee* court, which prevented the forfeiture of the property

7

in favor of the innocent spouse. The language of the forfeiture statute makes clear that "*any* property constituting, or derived from, any proceeds the [defendant] obtained, directly or indirectly, as the result of" the criminal action is subject to forfeiture. 21 U.S.C. § 853(c) (emphasis added). Further, courts have made clear that this provision is not limited to property held jointly with or even titled in the names of third parties. *See Grossman*, 501 F.3d at 849 ("The interests subject to forfeiture encompass all the fruits of a defendant's crimes, including assets held in the name of third parties."); *Bennis v. Michigan*, 516 U.S. 442, 449 (1996) (a Michigan forfeiture statute that allowed forfeiture of a car held jointly with a defendant's spouse who had no knowledge of the illegal activity was not unconstitutional); *United States v. Kennedy,* 201 F.3d 1324 (11th Cir. 2000) (a beach house was subject to forfeiture because proceeds from the criminal activity were used to fund the house, even though the defendant's spouse used legitimate funds to repay the defendant and received the house in divorce proceedings). At bottom, simply because the Morton Grove and Wheeling properties are held as tenancies by the entirety under Illinois law does not make them ineligible for forfeiture under federal law. *See Szaflarski*, 614 F. App'x at 838 (while "Illinois law determines whether [a claimant] has a legally cognizable interest in the property," "the federal foreclosure statute establishes whether a claimant has demonstrated that the forfeiture was invalid due to the assertion of that property interest. 21 U.S.C. § 853(n).").

But this is not to say that Yasmin and Rehana's interests in the properties are subject to forfeiture. Rather, only the defendants' interests in the properties are so

8

subject. *See Kennedy,* 201 F.3d at 1329 ("The criminal forfeiture provisions of section 853 authorize the government to seek forfeiture of a defendant's interest in subject property. This is in contrast to the civil forfeiture scheme embodied in 21 U.S.C. § 881, involving an *in rem* proceeding, wherein the whole property (as opposed to a particular defendant's interest in the property) is treated as being itself guilty of wrongdoing."). As the government suggests, an approach similar to the one adopted in *1500 Lincoln Ave* could be used here for the Morton Grove and Wheeling properties, *see* R. 352 at 7, if the parties do not agree to another method of forfeiture, such as selling the property and splitting the proceeds or agreeing to a payment plan by which Yasmin and Rehana "purchase" the defendants' interests in the properties.

The government makes a cursory argument that it is entitled to recover the entire property, not just the defendants' interests, because its right to the properties vested when the Adverse Claimants and the defendants transferred the properties out of their individual names to trusts in their respective names. While the Court agrees that the government's interest vested when the defendants committed the acts giving rise to the forfeiture, which occurred before the creation of the trusts, it does not agree that the transfer extinguished Yasmin and Rehana's interests. The transfer of the Morton Grove and Wheeling properties did not break the tenancies by the entirety. *See Loventhal v. Edelson,* 844 F.3d 662, 663-64 (7th Cir. 2016) (transfer of marital residence held through tenancy by the entirety to the husband's trust did not sever tenancy by the entirety despite the trust containing certain provisions allowing the husband to solely make decisions regarding the marital residence) (interpreting

9

the Illinois Joint Tenancy Act, 765 ILCS 1005/1c). Further, the "relation back doctrine" on which the government relies, and which provides that "the government's interest in criminal proceeds vests upon the commission of the criminal act itself" under 21 USC § 853(c), applies only to "property that is subsequently transferred to a person other than the defendant." The property here was not transferred to another person; rather it was transferred to the same individuals by way of a trust. The government offers no support for the proposition that this transfer was sufficient to meet the special forfeiture allowed by 21 USC § 853(c).

In sum, the Adverse Claimants' rights are not superior to the defendants' interests simply because the properties are held through tenancies by the entirety, But the Adverse Claimants do hold rights to the properties to the extent they can prove their interests as tenants by the entirety. They have not yet done so. The Adverse Claimants fail to plead any facts in their petitions that support their interest, despite attaching evidence to their response to the government's motion to dismiss. *Compare* R. 241-42 *with* R. 350 at 1 (listing the dates the properties were purchased and attaching the warranty deeds). The Court therefore dismisses the petitions with respect to the Morton Grove and Wheeling properties without prejudice, to allow the Adverse Claimants to properly and specifically plead their interests.

### B. Payments Toward Upkeep

As to the remaining properties, the Adverse Claimants argue they contributed to the expenses of the properties and as a result have an interest in them. The government argues the Adverse Claimants have failed to provide anything but

conclusory allegations that they have made such payments. The Court agrees. Section 853(n)(3) requires an adverse petition to "set forth the nature and extent of the petitioner's right, title or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title or interest in the property, and any additional facts supporting the petitioner's claim, and the relief sought." 21 U.S.C. § 853(n)(3). "These are not simply technical requirements, but are construed strictly to discourage false or frivolous claims." *United States v. Preston*, 123 F. Supp. 3d 108, 112 (D.D.C. 2015). The Court will address each of the remaining properties separately.

**Unit 301 property**. The Unit 301 property was purchased by defendant Kassam and is owned solely by him. *See* R. 350-4. The government presented evidence that over $300,000 in mortgage payments were made using fraudulently obtained funds. R. 346-5; 350 at 8. Rehana does not dispute those facts—instead, she contends she has "over time made certain payments for repair, maintenance and property taxes through her own funds." R. 350 at 8; R. 282 at 9. These allegations are not sufficient to plead her interest in the property. Rehana fails to provide any of the necessary specifics, such as the time period during which she made payments or the amount of payments she made, to plausibly allege that she has any interest in the property. *See, e.g., United States v. Klemme*, 894 F. Supp. 2d 1113, 1117 (E.D. Wis. 2012) ("The original petition is subject to dismissal under § 853(n)(3) and Rule 32.2(c)(1)(A), as it fails to specify the time and circumstances of petitioner's acquisition of right, title, or interest in the [property]."); *cf. Preston*, 123 F. Supp. 3d at 114 (allegations including

11

when the petitioner transferred the cash, the reasons for the transfers, and an account statement that listed the two transfers were sufficient to satisfy the requirements of Section 853(n)(3)). Rehana's adverse claim as to the Unit 301 property is dismissed.

**Unit 106 property**. Scheila purchased the Unit 106 property on August 25, 2006. R. 350-3. The government contends that $193,633 in mortgage payments were made from fraudulent funds. R. 346-3. Scheila does not dispute the government's assertion. Instead Scheila argues that "[t]o the extent the Unit 106 Property has value in excess of those traceable proceeds, Scheila has an interest in that amount as the legal title holder of the Unit 106 Property." R. 350 at 8. While it may be true that Scheila is entitled to the value of the property in excess of the funds traceable to the fraud, it not sufficient to simply be a legal title holder to have an interest in the property to defeat forfeiture entirely. *See Grossman*, 501 F.3d at 849. If it were sufficient, witty criminals would title cars, houses, and other property in their spouses, mothers, and sisters' names and possibly avoid criminal forfeiture completely. Rather, to show an interest in the property sufficient to defeat forfeiture, Scheila must establish that the interest vested in her rather than the defendants or that her interest was superior to the defendants' interest. 21 U.S.C. § 853(n)(6). Scheila attempts to do so by arguing that she has made homeowner association payments and repair and maintenance payments for the Unit 106 property. Scheila presents no facts, however, to support her conclusory allegations. As a result, Scheila's adverse claim as to the Unit 106 property is dismissed.

12

**Woods property.** Scheila holds even less of a plausible claim to the Woods property. The Woods property was purchased in Scheila's name on November 17, 2010, well after the defendants were immersed in the mail fraud activities that led to their convictions. R. 350-5. The government indicates that $275,000 in mortgage payments, including a $50,000 down payment, were made on the property using fraudulent funds. R. 346-4. Scheila argues that "[t]here is a genuine issue of material fact with respect to the proceeds traceable to the mortgage payment of the Woods Property that requires a hearing," R. 350 at 8, but fails to point to any allegations that suggest the government's assertions are not true. She also argues she has made payments relating to real estate taxes, monthly homeowner's association dues, repair and maintenance, but does not make any allegations supporting those payments. Scheila's adverse claim as to the Woods property is dismissed.

The Adverse Claimants' petitions as to the Unit 106 property, the Unit 301 property, and the Woods property are dismissed without prejudice. The Court will allow the Adverse Claimants to amend their petitions to provide more details as to their interests in those properties.

### C. Penalty of Perjury

Any amended petitions, however, will also need to comply with the requirements of 21 U.S.C. § 853(n)(3). That provision requires third-party petitioners in forfeiture proceedings to execute each claim "under the penalties of perjury." In this case, each verification states:

> I, [Adverse Claimant], under penalties provided by law pursuant to 28 U.S.C. § 1746 of the United States Code, certify that the statements set

13

forth in this instrument are true and correct . . .

R. 280-82. Section 1746 provides that an unsworn matter may be treated as sworn, provided that it is "prove[n] by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, *as true under penalty of perjury*, and dated, in substantially the . . . form" of the model declaration provided. 28 U.S.C. § 1746 (emphasis added). The model declaration requires the declarant to (1) "declare (or certify, verify, or state)," (2) "under penalty of perjury," (3) that the matter sworn to is "true and correct." *Id*.

The Adverse Claimants' declarations do not meet that model declaration standard. Agreeing to "penalties provided by law pursuant to [Section 1746]" is not sufficient. The court in *In re World Trade Ctr. Disaster Site Litig.*, 722 F.3d 483, 488 (2d Cir. 2013), held that the substitution of "subject to punishment" for "under penalty of perjury" in a declarant's statement was "a substantial departure from the substance of the declaration provided in § 1746, and thus, does not comply with the statute." *Id*. The court held that the inclusion of the language "under penalty of perjury" is an integral requirement of § 1746 because "it impresses upon the declarant the specific punishment to which he or she is subjected for certifying to false statements." *Id.*; *see also Barker v. Quick Test, Inc.*, 2016 WL 1019708, at *2-*3 (N.D. Ill. Mar. 15, 2016) (holding that interrogatory answers that were not made under penalty of perjury did not comply with § 1746 and therefore were inadmissible). Here too, the Adverse Claimants' verifications do not declare their petitions' truthfulness "under penalty of perjury," but rather declare under penalties provided by law pursuant to 28 U.S.C. § 1746. But § 1746 does not contain any penalties for

submitting false oaths or committing perjury, and thus such a declaration cannot meet the requirements as described in *In re World Trade Ctr. Disaster*. Accordingly, the Adverse Claimants' petitions do not meet the penalty of perjury requirement of 21 U.S.C. § 853(n)(2). The Court will grant the Adverse Claimants an opportunity to remedy this error. However, a failure to comply with the requirement in amended petitions will result in their dismissal.

## Conclusion

For the reasons explained above, the Court grants the government's motion to dismiss the adverse claims, R. 346, as to all the real properties at issue. The Adverse Claimants may file amended petitions that cure the deficiencies identified in this opinion on or before September 10, 2018. A failure to comply with the declaration requirements of 21 U.S.C. § 853(n)(2) will result in automatic dismissal of the petitions.

ENTERED:

_Thomas M Durkin_
_____

Dated: August 20, 2018
Honorable Thomas M. Durkin
United States District Judge